UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PARASTUE ZARGHAMI, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MARCO RUBIO,<br><br>　　　　Defendant. | Case No. 1:24-cv-00172 (ACR) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Parastue Zarghami (Parastue) is an American citizen. Dkt. 1 ¶ 66. Her brother, Plaintiff Arman Zarghami Khanesar (Arman), is an Iranian national seeking an immigrant visa to move to the United States. *Id.* ¶ 69. On January 19, 2024, Plaintiffs sued the Secretary of State, *id.* ¶ 1, joining the growing number of litigants in this District challenging visa-processing delays. Citing both the Administrative Procedure Act (APA), 5 U.S.C. §§ 555(b), 706, and the Mandamus Act, 28 U.S.C. § 1361, the Complaint asserts that the delay in adjudicating Plaintiff Arman's application is unreasonable and seeks an order requiring prompt adjudication. Dkt. 1 ¶¶ 107–69; *id.* ¶¶ 33–34. Defendant moved to dismiss the complaint on April 24, 2024. Dkt. 8. Plaintiffs' frustration is understandable, but their Complaint does not state any plausible claims. The Court therefore **DISMISSES** this case without prejudice.

### I.　　BACKGROUND

**A. Legal Background**

A U.S. citizen who wants to help a noncitizen relative obtain lawful permanent resident status may file an I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services (USCIS), a subagency of the Department of Homeland Security (DHS). *See* 8 U.S.C.

1

§§ 1152(b)(2)(A)(i), 1154; 8 C.F.R. § 204.1(a)(1).  If USCIS approves the petition and the beneficiary is outside the United States, the agency forwards the case to the State Department's National Visa Center (NVC) for processing.  8 C.F.R. § 204.2(a)(3).  The beneficiary must then submit additional paperwork, including a visa application form and relevant fees.  *See* 22 C.F.R. §§ 42.62–.63; 9 Foreign Affs. Manual § 504.1-2(b), https://fam.state.gov/FAM/09FAM/09FAM050401.html.  Once the applicant (that is, the beneficiary) submits the necessary materials, the NVC designates the case "documentarily complete" and coordinates with the appropriate consulate or embassy to schedule the applicant for a required consular interview.  *See* 22 C.F.R. § 42.62; 9 Foreign Affs. Manual § 504.1-2(b)–(d).  "Appointments are generally scheduled in the chronological order of the documentarily complete applicants."  9 Foreign Affs. Manual § 504.1-2(d).  Following the interview, the consular officer "must" generally either "issue the visa" or "refuse the visa."  22 C.F.R. § 42.81(a).  If the consular officer determines that she needs additional information to determine the applicant's eligibility, she may, "in accordance with [State] Department procedures," refuse the visa pending "further administrative processing."  Administrative Processing Information, U.S. Dep't of State, https://travel.state.gov/content/ travel/en/us-visas/visa-information-resources/administrative-processing-information.html.

B. Factual Background

On September 15, 2006, Plaintiff Parastue, an American citizen, filed an I-130 petition on behalf of Plaintiff Arman, an Iranian national, and former Plaintiffs Arash Zarghami Khanesar (Arash) and his wife Fatemeh Rezazadeh (Fatemeh), also Iranian nationals.[1]  *Id.* ¶ 67–70.

---

[1] In August 2024, former Plaintiffs Arash and Fatemeh were issued visas.  Dkt. 17.  Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), they dismissed their claims without prejudice.  *Id.*

USCIS approved the petitions in March 2007 and forwarded the case to the NVC for consular processing. *Id.* ¶ 71. Plaintiff Arman then submitted an online visa application, seemingly in January 2020, *see id.* ¶ 83; Dkt. 1-3, and in May 2021, the NVC notified him that the cases were documentarily qualified. *Id.* ¶ 84. At the time of filing, his cases had been pending at the NVC for thirty-two months without an interview. *Id.* ¶ 85. He inquired into the status of his application multiple times but received "no useful information." *Id.* ¶ 90. Yet in October 2024, while this litigation was ongoing, a consulate interviewed Plaintiff Arman. Dkt. 20. The State Department then refused his application, and so it remains in administrative processing. *Id.* This wait has caused Plaintiffs Parastue and Arman "severe emotional distress and psychological harm . . . by forcing them to remain separated with no idea when they will be reunited" as well as "an immense amount of financial strain." Dkt. 1 ¶ 97, 100.

## II.     LEGAL STANDARD

Defendant's Motion seeks dismissal both under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Where, as here, "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations," *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  To meet that standard, a plaintiff's allegations must support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up).

### III.    ANALYSIS

Defendant argues that Plaintiffs lack standing to sue the Secretary of State and that the Complaint does not state any plausible claims.[2]  Readers familiar with the Court's past visa-delay decisions will be unsurprised to learn that "[t]he Court rejects the first argument but agrees with the second." *Shahnia v. U.S. Dep't of State*, No. 23-cv-2337, 2024 WL 3202225, at *2 (D.D.C June 27, 2024).

#### A.  Plaintiffs Have Standing to Sue Secretary Rubio

Defendant contends that Plaintiffs lack standing—which requires, among other things, "that a favorable decision will likely redress" Plaintiffs' injuries, *City of Scottsdale v. FAA*, 37 F.4th 678, 679 (D.C. Cir. 2022) (cleaned up)—to sue the Secretary of State because only a consular officer, and not the Secretary, can adjudicate Plaintiff Arman's visa application.  *See* Dkt. 8 at 16–17.  "This Court, like many (though not all) others in this District, has previously rejected this argument, and it stands by that conclusion." *Shahnia*, 2024 WL 3202225, at *2. "[W]hile the Secretary . . . has no legal authority to control which visa applications consular

---

[2] Defendant also argues that he does not have any clear, nondiscretionary duty to act, as is necessary for a mandamus claim.  Dkt. 8 at 17–23.  This argument does not implicate the Court's Article III jurisdiction, and so the Court need not address it before dismissing this case on other grounds.  *See Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *5 & n.5 (D.D.C. Mar. 8, 2024) (explaining why the Court may bypass this argument).

officers grant or deny, nothing precludes him from directing them to decide pending applications within a reasonable time, and an order requiring him to do so would likely redress Plaintiffs' injuries by ending the challenged delay." *Id.* (cleaned up). Plaintiffs have standing to sue Secretary Rubio.

### B. Plaintiffs Have Not Stated Plausible Unreasonable Delay Claims

The Court turns to the merits of Plaintiffs' unreasonable-delay claims under the APA and the Mandamus Act. "[T]he central question" under both statutes is "whether the agency's delay is so egregious as to warrant mandamus." *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *6 (D.D.C. Jan. 30, 2024) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

To answer that question, courts in this Circuit consider the six "*TRAC*" factors, drawn from the D.C. Circuit's decision in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984): (1) "the time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* at 80 (cleaned up). These factors comprise four categories:

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second,

> what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023) (cleaned up).

Taking these inquiries in turn, the Court concludes that the *TRAC* factors do not plausibly point Plaintiffs' way. The Court must therefore dismiss Plaintiffs' case. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340–46 (D.C. Cir. 2023) (affirming dismissal of visa-delay case for failure to state a claim based on *TRAC* factors).

### 1.   *TRAC* factors one and two

The first two factors, which consider whether the agency is following a "rule of reason," "congressionally prescribed or otherwise," *Khazaei*, 2023 WL 6065095, at *6 (cleaned up), support dismissal. Plaintiffs argue that Congress *has* set a timeframe within which their claims must be adjudicated, pointing to the Immigration and Nationality Act's language that "[i]t is the sense of the Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." Dkt. 9 at 21 (citing 8 U.S.C. § 1571(b)). As Plaintiffs admit, however, this language is not binding, *see id.*, and cannot be viewed as a congressionally prescribed deadline. *See Da Costa*, 80 F.4th at 344. As a result, the question is whether Plaintiffs plausibly allege that there is no "rhyme or reason" behind the delay. *Khazaei*, 2023 WL 6065095, at *6 (cleaned up).

Plaintiffs have not done so. An agency "employs a rule of reason" when it processes immigration applications on a "first-in, first-out" basis. *Da Costa*, 80 F.4th at 340–41. Plaintiffs assert that such a system was not used here, *see* Dkt. 1 ¶ 41; Dkt. 9 at 17, but in doing so rely on

6

a declaration discussing the processing of Security Advisory Opinions (SAOs).  Dkt. 1 ¶ 41; Dkt. 1-7.  An SAO is submitted by a consular officer when "allegedly derogatory information" exists about an applicant and after the officer, during a visa interview, has asked the applicant to complete supplemental responses to Form DS-5535.  Dkt. 1 ¶ 41.  While Plaintiffs allege that former Plaintiffs Arash and Fatemeh were instructed to complete this form, at no point do they allege that Plaintiff Arman was subject to an SAO.  *Id.* ¶ 76–77.  Indeed, Plaintiff Arman would never have even been in a position to receive a Form DS-5535, given that he had not yet received an interview at the time of filing.  Accordingly, Plaintiffs cannot rely on how SAOs are processed to dispute the "first-in, first-out" basis.

In the absence of such allegations, "[c]ourts in this jurisdiction often look to the length of delay as a rough yardstick to determine whether [a] 'first-in, first-out' rule is, in fact, being applied." *Khoshrou v. Blinken*, No. 22-cv-2859, 2023 WL 4930086, at *5 (D.D.C. Aug. 2, 2023); *accord, e.g.*, *Barazandeh*, 2024 WL 341166, at *8 ("Absent a congressionally supplied yardstick, courts typically turn to [case law] as a guideline.") (cleaned up).  Case law confirms that the delay here is neither unusual nor inconsistent with a rule of reason.  Visa processing inevitably "takes a baseline amount of time," and "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Khazaei*, 2023 WL 6065095, at *6.  The delay here—only five months since Plaintiff Arman's October 2024 interview—is far shorter than those that courts

7

have found reasonable in other cases.[3]  *Id.*; *see also Da Costa,* 80 F.4th at 339–40, 342 (finding a four-and-a-half-year delay not unreasonable).  The length of the delay, standing alone, thus does not support a reasonable inference that the agency is not processing applications in an orderly, rational way.  The first two *TRAC* factors favor Defendant.

### 2.     *TRAC* factor four

The fourth factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, "carries significant weight," *Barazandeh*, 2024 WL 341166, at *9, and heavily favors Defendant.  The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting [a party] at the head of the queue would simply move all others back one space and produce no net gain."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up).  Plaintiffs seek precisely this sort of relief.  "Consular processing capacity is . . . a zero-sum game, so granting [Plaintiffs] relief would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own."  *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024) (cleaned up); *accord Da Costa*, 80 F.4th at 343–44.  "Any such reordering of the queue of applicants seeking adjudication would be inappropriate . . . because there would be no demonstrable net gain in visa processing at large."  *Ahmadi*, 2024 WL 551542, at *6 (cleaned up); *accord Da Costa*, 80 F.4th at 343–44.

---

[3] Courts diverge as to how to calculate delay in visa-delay cases—for example, whether the relevant period begins when USCIS approves the I-130 petition, when the applicant submits the required materials, or at the time of the last action by the agency and whether it ends when the case is filed or on the date of the decision.  *See, e.g.*, *Dehkordi v. Bitter*, No. 22-cv-2470, 2023 WL 5651845, at *4 n.4 (D.D.C. Aug. 31, 2023).  The Court need not decide among those alternatives because, no matter which of those possible start date applies, and even assuming the delay runs through today, Plaintiffs' claims fail.  If they mean to argue that the delay began when the petition was filed, the Court has previously rejected that interpretation.  *See Bahrami v. Blinken*, No. 23-cv-1477, 2024 WL 3638200, at *4 n.4 (D.D.C. Aug. 2, 2024).

### 3. *TRAC* factors three and five

*TRAC* factors three and five, which examine "the interests prejudiced by the delay," including the effect on "human health and welfare," *Da Costa*, 80 F.4th at 344 (cleaned up), cut marginally in Plaintiffs' favor but do not outweigh the other factors. Plaintiffs allege that the delay has forced their family "to remain separated with no idea when they will be reunited" and thereby created "severe emotional distress and psychological harm." Dkt. 1 ¶ 97; Dkt. 9 at 22. Courts in this District have concluded that similar allegations tilted these factors in other plaintiffs' favor, if only narrowly. *See, e.g.*, *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 77 (D.D.C. 2022) (finding that the third and fifth *TRAC* factors "slightly" favored a visa-delay plaintiff based on an allegation that the delay "had a profound and negative impact on his life"). *But see Da Costa*, 80 F.4th at 344–45 (concluding that these factors did not favor visa-delay plaintiffs absent harms beyond "the uncertainty that results any time an individual must continue to wait to secure a benefit"). However understandable Plaintiffs' distress may be, "many others facing similar circumstances" are experiencing the same harm. *Siddiqui*, 646 F. Supp. 3d at 77 (cleaned up); *accord Bahrami*, 2024 WL 3638200, at *7 ("[D]elays in visa processing separate . . . many families."). Without more pressing or unusual injuries, *TRAC* factors three and five do not warrant interfering with the agency's priorities and placing Plaintiffs at the front of the line. *See Da Costa*, 80 F.4th at 344–45.

### 4. *TRAC* factor six

The sixth *TRAC* factor—whether "any impropriety lurk[s] behind agency lassitude," *TRAC*, 750 F.2d at 80 (cleaned up)—does not favor either side. Plaintiffs concede that at this point the factor is "relativ[e]ly neutral." Dkt. 9 at 23.

\*   \*   \*

Altogether, the *TRAC* factors do not plausibly point Plaintiffs' way, and their unreasonable-delay claims therefore fail.  The Court must therefore dismiss them under Rule 12(b)(6).

## IV.     CONCLUSION AND ORDER

The Court sympathizes with Plaintiffs' situation, but their Complaint does not state plausible unreasonable-delay claims.  The Court therefore dismisses this case.

For these reasons, the Court hereby **GRANTS** Defendant's Motion to Dismiss, Dkt. 8; **DISMISSES** Plaintiffs' Complaint, Dkt. 1, and this case without prejudice; and **DIRECTS** the Clerk of Court to close this case.

**SO ORDERED.**

This is a final appealable Order.  *See* Fed. R. App. P. 4(a).

Date:   March 21, 2025

                                                                                   ANA C. REYES
                                                                                    United States District Judge